# Exhibit B

# AGREEMENT TO PURCHASE AND SELL REAL ESTATE
## ("AS-IS" Contract)

This Contract of Sale ("Contract") is made on **MARCH 11, 2011** between **BENJIGATES ESTATES, LLC** ("Seller"), and **BRENDA EALEY** ("Buyer"). It is agreed that the Seller shall sell and the Buyer shall buy the following described property **UPON THE TERMS AND CONDITIONS HEREINAFTER SET FORTH**, which shall constitute the *STANDARDS FOR REAL ESTATE TRANSACTIONS* set forth within this contract. Now, therefore, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged and based upon the mutual promises and obligations undertaken by the parties hereto, intending to be legally bound and knowing that the following will be relied upon by way of representation, hereby confirm that:

1. **PROPERTY ADDRESS: 19686 MITCHELL, DETROIT, MI 48234 — PARCEL I.D.#: 13023828.**

    **LEGAL DESCRIPITION:**
    E MITCHELL N 15FT LOT 98 AND 97 HAMFORD SUB L36 P46 PLATS, WCR 13/246 45X101.50

2. **PURCHASE PRICE: FOUR THOUSAND FIVE HUNDRED DOLLARS ($4,500.00)**

3. **METHOD OF PAYMENT:** (Check the appropriate box)
    ☐ CASH
    ☒ LAND CONTRACT- (SEE ATTACHED 'LAND CONTRACT ADDEDUM')

4. **PROPERTY CONDITION:**
    a. Buyer acknowledges and agrees that Seller has not made and hereby specifically disclaims any warranty, guaranty, or representation, oral or written, past, present, or future, of, as to, or concerning (i) the nature, square footage, condition, value, or quality of the geology, the presence of environmental hazards and the suitability thereof and the Property for any and all activities and uses which Buyer may elect to conduct thereon, (ii) the manner, construction, condition, quality, the state of repair or lack of repair of any of the Property, (iii) except for any warranties contained in the deed, the nature and extent of any right of way, lease, possession, lien, encumbrance, license, reservation, condition, or otherwise (iv) the compliance of the Property or its operation with any laws, rules, ordinances, or regulations of any government or other body, and, (v) the income to be derived from the Property, Buyer hereby expressly acknowledges and agrees that Buyer has thoroughly inspected and examined the Property to the extent deemed necessary by the Buyer in order to enable Buyer to evaluate the purchase of the Property. Buyer hereby further acknowledges and agrees that Buyer is relying solely upon the inspection, examination, and evaluation of the Property by Buyer and that Buyer is purchasing the Property on an "AS IS, WHERE IS" and "WITH ALL FAULTS" basis and not on any information provided or to be provided by Seller. Buyer acknowledges that it has sufficient information regarding the property, is relying on its own experts, and not seller or any information provided by seller, if any, and is not looking to seller for any additional information with respect to condition of property. Buyer expressly acknowledges that, in consideration of the agreements of Seller herein, Seller makes no warranty of representation expressed or implied, or arising by operation of law, including, but in no way limited to any warranty of condition, habitability, merchantability, or fitness for a particular purpose except otherwise specified herein. It is further agreed that Seller has not warranted, and does not hereby warrant the Property or any improvements located thereon, now or in the future, will meet or comply with the requirements of any safety code or regulation of the state, city, or county in which the Property is located, or any other authority or jurisdiction.

        _____/_____
        Buyer      Seller

    b. If the Property was built prior to 1978, the Property may contain lead-based paint or other sources of lead. Exposure to lead-based paint or other sources may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavior problems and impaired memory. Lead poisoning also poses a particular risk to pregnant woman. Buyer agrees that it is purchasing the Property "As-Is" without any representations or warranties whatsoever as to the condition of the Property. Buyer further agrees that the Seller has no responsibility or liability for, and Buyer hereby unconditionally releases Seller from, any and all liability, both known and unknown, present or future, that is based upon or related to, the existence of lead or lead-based paint on or about the Property. Buyer acknowledges that it has been informed by Seller of possible health hazards posed by exposure to lead from lead-based paint or other sources on or about the Property. Buyer further acknowledges that Buyer has waived the opportunity to conduct a risk assessment for the presence of lead-

based paint hazards on the Property. Finally, **Buyer releases Seller from any and all claims respecting the property and the sale of the property.**

Buyer     Seller

c. Buyer agrees that it has performed all due diligence on property prior to signing this contract.

Buyer     Seller

5. **PROPERTY RESTRICTIONS, EASEMENTS, LIMITATIONS, LIENS AND ENCUMBRANCES:** Buyer shall take title to the Property subject to all matters of record, including delinquent property taxes, un-extinguished encumbrances, and monetary liens. Further, Buyer acknowledges that Seller obtained ownership from county Treasurer pursuant to Foreclosure Judgment and Seller makes no representation as to the availability of title insurance. Further, Buyer acknowledges that property may be subject to liens and/or encumbrances incurred after the entry of the Foreclosure Judgment. Seller makes no warranty regarding the existence of such liens or encumbrances. _____ (Initials)

6. **PROPERTY PURCHASE PRICE:** Buyer shall wire funds to cover the purchase price of the property to the Seller on the day of closing or bring certified funds to the closing table.

7. **SELLER FEES AND OUTSTANDING BALANCES:** Buyer shall wire or hand-deliver certified funds to cover the purchase price of the property and any applicable fees to close, at the agreed upon time of closing. In the event said purchase it to be completed over an agreed upon, set period of time **(Land Contract)**, Buyer acknowledges understanding that said balance must be **PAID IN FULL** prior to preparation, recording, and subsequent delivery of Deed(s) transferring ownership.

8. **DEED DELIVERY:** All Quit Claim Deeds will then be prepared and recorded by Seller. Following recording, Seller will provide a copy to the purchaser. A "Certified" copy will be forwarded directly to buyer by County Register. Seller or Seller's representative shall record said Quit Claim Deed (unless agreed otherwise) and deliver it to the Buyer or Buyer's Escrow within 45 days (or first business day thereafter if on a weekend or holiday). Seller may deliver the Quit Claim Deed to the Buyer by traditional US Postal Service's First Class mail or make said Deed available for Buyer's pick-up.

9. **CLOSING COSTS:** Buyer shall be responsible for any and all closing costs (including document delivery, recording, and wiring fees). Buyers shall be responsible for obtaining title insurance on their own.

10. **PROPERTY INSURANCE:** Property insurance is required on every property being purchased over time (Land Contract). Buyer shall be responsible for paying this property insurance once this contract is signed until the deed is recorded in the Buyer's name. Cost for said coverage shall be included in Buyer's required monthly payment to complete said purchase contract. In the event a claim of damage is filed, any and all pay-outs for damages shall be paid directly and solely to Seller. Seller shall offer reimbursement of funds for CAPITAL IMPROVEMENTS (Physical-Structural Improvements ONLY) made to the property, by said buyer. Buyer MUST HAVE receipts on file with Seller, PRIOR TO any claim. Please be advised, it is left to the Seller's sole discretion to determine whether the extent of damage to property warrants an insurance claim be filed. Seller's "Blanket Coverage" is far more important than any one parcel. Buyer is encouraged to obtain a separate "Contents" policy to cover any and all personal contents. Additionally, Buyer can obtain a separate structural policy that lists Seller as the 'Vendor' and must cover and pay Seller, IN FULL, for the balance owing at time of claim. Seller will not be responsible for ANY COSTS associated with Buyer's "private" policy. A copy of said policy must be provided to and approved by Seller.

11. **INDEMNIFICATION:** Buyer agrees to indemnify and hold harmless Seller and its agents from and against any and all losses, claims, demands, liabilities, costs, damages and expenses (including attorney's fees and costs) that Buyer may incur arising from the Buyer's actions or failure to act on, respond to or comply with any (1) local, state or federal law, rule or ordinance affecting the Property including, but not limited to, building code requirements, nuisance claims or abatements thereof, condemnation proceedings, lien enforcement actions and the like; and (2) liabilities arising from said property from date of the contract, whether or not insured (as required in paragraph 9) and the like. Further, Buyer acknowledges that the Property may be subject to proceedings in law or equity to abate, correct, or otherwise comply with local, state or federal requirements regarding the Property and that this indemnity shall also apply in such instances. Additionally, Buyer agrees and expressly acknowledges understanding and responsibility for any such claims that may be delivered to Seller as "Owner of Record" during the "Term" of this contract up to the date of "Transfer" of ownership to Buyer by way of recording of Quit Claim Deed.

12. **OTHER AGREEMENTS:** No other agreements or representations, unless specifically set forth in the Contract, shall be binding upon any of the parties. This Contract sets forth the full and complete understanding of the parties hereto. No

2

amendment, modification, supplement or addendum to this Contract shall be binding unless in writing and duly executed and delivered by each of the parties hereto to the other party. Nothing herein shall be construed as constituting a partnership or joint venture between Buyer and Seller. (SEE ATTACHED 'LAND CONTRACT ADDEDUM', if applicable.)

13. **QUALIFIED BUYER:** Buyer considers itself a knowledgeable and sophisticated individual or institutional purchaser having such knowledge of financial and business matters that is capable of evaluating the merits and risks of property ownership and specifically acknowledges that this is an investment transaction for the purpose of acquiring an asset.

14. **RIGHTS AND AUTHORITY TO CONTRACT:** Each party to this Agreement, represents and warrants that they have full corporate, personal and general authority to execute this Agreement and to perform the duties that are required of each herein, swear and sincerely declare that the information provided above is to the best of each party's knowledge true and correct and knows that it is an offense to make a declaration knowing that it is false in a material particular.

15. **BROKER ACKNOWLEGEMENT:** _____ is the designated broker of the Seller. Said Broker will retain the purchaser's Earnest Money Deposit in the amount of: _____ dollars. Said Broker will coordinate and oversee all applicable duties on behalf of the Seller. (e.g. Showing of the property, appraiser access, inspections, etc.) Said Broker is further authorized to Co-operate with: _____ the designated broker of the Buyer and/or authorized agent(s) of Buyer's broker. Buyer's broker will be paid a commission of: _____ dollars for services rendered in connection with this transaction.

<u>**Additional General Conditions and Agreements**</u>

The following is a list of General Conditions and Agreements as established by the parties to this real estate purchase transaction.

1. Buyer acknowledges responsibility for payment for the current year(s) property taxes. **INSERT YEAR(S) <u>2010</u>**
   **SUMMER TAX AMOUNT: $2,137.79** – (Amount accurate as of this contract date.)
   **WINTER TAX AMOUNT: $252.49** – (Amount accurate as of this contract date.)
2. Buyer shall consummate this transaction with a down payment of ~~TBD~~. Balance to be paid per attached **LAND CONTRACT ADDENDUM**. (SEE ATTACHED) – ☐- NON-APPLICABLE $1,500 Down

With signatures attached, both Buyer and Seller acknowledge full understanding and agreement with the above listed Terms and Conditions of this purchase contract, and agree to be legally bound to the executive thereof.

**Accepted by Buyer:** Brenda Kaiel  3/11/11
**Printed Name:** _____ **Date**
_Wanda Hall_
**Printed Name:** _____ **Date**
**Address:** 6171 Miller
Detroit MI 48211
**Phone:** (313) 283-5742

**Accepted by Seller:** Anton Benjamin  3/11/11
**Printed Name:** _____ **Date**
**Title:** CEO
BENJIGATES ESTATES, LLC
28600 Southfield Rd. Ste 200C
Lathrup Village, MI 48076
248-595-8625 (office)
248-595-8623 (fax)



## LAND CONTRACT ADDENDUM

This addendum is hereby attached and becomes THE GOVERNING document as part of the 'AGREEMENT TO PURCHASE AND SELL REAL ESTATE ("AS-IS" Contract)' dated: <u>MARCH 11, 2011</u>, by and between BENJIGATES ESTATES, LLC (Seller- "Vendor") whose address is: 28600 Southfield Rd, Ste. 200C, Lathrup Village, MI 48076 and <u>BRENDA EALEY</u> (Buyer- "Vendee") & _____ (Buyers- "Vendees") whose address is: <u>6171 MILLER, DETROIT, MI, 48211</u> for the property located at: <u>19686 MITCHELL, DETROIT, MI, 48234</u> (Subject Property).

**Legal Description:**     Parcel I.D.#: <u>13023828.</u>

<u>E MITCHELL N 15FT LOT 98 AND LOT 97 HAMFORD SUB L36 P46 PLATS, WCR 13/246 45X101.50</u>

Being witnessed by a **NOTARY PUBLIC** and made **PUBLIC RECORD** via **LAND CONTRACT MEMORANDUM** recorded in the county of <u>Wayne</u>, state of <u>Michigan</u>

**INSERT REGISTAR'S INFORMATION:**

   DATE: _____    LIBER NO: _____    PAGE NO: _____

**SALES PRICE:** $ 4,500

**DOWN PAYMENT:** $ 1,500

**PRINCIPLE BALANCE:** $ 3,000

**SAID BALANCE SHALL BE PAID IN THE FOLLOWING MANNER:**

**CHECK THE APPROPRIATE BOX BELOW:**

1. **TERM LENGTH** – (the number of months the Principle Balance shall be divided over)
   Term Length in months:
   - [x] 12 months
   - [ ] 18 months
   - [ ] 24 months* -*Requires underwriting approval; additional fees apply.
   - [ ] 36 months* -*Requires underwriting approval; additional fees apply.

   **PRINCIPLE PAYMENT AMOUNT:** $ 250

2. **FINANCE CHARGE AMOUNT** – (the monthly fee for the time to complete the purchase)
   For the Term Length selected, the corresponding monthly FINANCE CHARGE amount is:
   - [x] 12 - $175 – Paid on a monthly basis ONLY, while principle balance remains
   - [ ] 18 - $150 – Paid on a monthly basis ONLY, while principle balance remains
   - [ ] 24 - $125 – Applied to life of contract*
   - [ ] 36 - $100 – Applied to life of contract*

   **PRINCIPLE PAYMENT AMOUNT + FINANCE CHARGE =** $ 425

   *In the event the vendee chooses to "PAY-OFF" the land contract prior to the completion of the full 24 or 36 month term, the TOTAL "PAY-OFF" AMOUNT DUE <u>will include</u> the total balance of the remaining accrued months of FINANCE CHARGES.*

3. **INSURANCE REQUIREMENT**
   Hazard Insurance is a requirement for <u>every</u> property being purchased via Land Contract. Vendor has secured a "blanket" insurance property for its property holdings. Insurance 'Start Up' cost shall be: $ 100, paid at closing. Vendee acknowledges responsibility for his, her, or its monthly premium payments in the amount of:
   $ 30 - (Add to previous total)
   Vendee also acknowledges understanding that said Hazard Insurance policy is for the protection of the Vendor's interest. This policy shall cover the **DWELLING (Structure)** and **seller's LIABILITY ONLY**. Vendee is encouraged to obtain a separate insurance policy for Vendee's PERSONAL contents. Further, Vendor strongly suggests that Vendee furnishes receipt(s) to Vendor that shall be kept on file. So, that in the event of a claim for loss, Vendor shall have a record of Vendee's capital expenditures. It shall be left to Vendor's <u>sole</u> discretion to offer compensation to Vendee from said insurance pay-out. Vendor is under **NO OBLIGATION to FILE A CLAIM.**

# LAND CONTRACT ADDENDUM

Should it be determined that said loss is due to Vendee's negligence, no monetary compensation to Vendee will be considered.

4. **CREDIT IMPROVEMENT REQUIREMENT**   ☑ Not Applicable
   For term lengths of 24 months or more, Vendee shall be required to enroll into the CREDIT KIT NOW, LLC® credit improvement system should Vendee's "middle" credit score prove to be less than 660. Cost of enrollment shall be: $___N/A___, paid at closing. Vendee also acknowledges responsibility for his or her monthly enrollment cost in the amount of: $___N/A___ - (Add to previous total)

5. **TITLE MONITORING REQUIREMENT**
   FRONTLINE PROPERTY PROTECTION, LLC® policy enrollment is required for every property being purchased via Land Contract. Vendor requires monthly monitoring of properties' title during the life of Land Contract. Vendee is not authorized to attach or contract to attach any LIENS or ENCUMBRANCES against the subject property without written consent by Vendor. Cost of enrollment shall be: $___250___, paid at closing. Vendee is responsible for the monthly payment of said monitoring fee in the amount of: $___7___ - (Add to previous total)

6. **PAYMENT OF PROPERTY TAXES REQUIREMENT**   ☑ Not Applicable
   For term lengths of 24 months or more, Vendee shall be required to make "periodic" payments toward accruing property tax balances. Said amount and interval of payments shall be based on annual tax amount and Vendee's income pattern. –See 'PROPERTY TAX PAYMENT AGREEMENT'

**TOTAL MONTHLY OBLIGATION: $ 462**

_____, (Vendee) hereby confirm my understanding of and agreement with the above identified terms, conditions, and contract requirements. I further acknowledge my **"Promise to Pay"** the '**TOTAL MONTHLY OBLIGATION**' listed. Additionally, I acknowledge that non-payment of this amount or any portions thereof shall result in **CONTRACT FOREFEITURE** and **TOTAL LOSS** of any payments made and all capital expended on improvements to the property. Initials of Vendee(s) or its Authorized Representative: ___BC___

7. **VENDOR'S DECLARATION**
   Hereby, let it be known by the purchasing party that the Seller of this property shall issue a "DECLARATION OF FORFEITURE" according to the *REVISED JUDICATURE ACT OF 1961; Act 236 of 1961; MCLA 600.5726* for any of the following MONETARY and/or MATERIAL BREACHES:

**MONETARY BREACHES**
Non-Payment of:
   1. Principle Payment
   2. Finance Charge
   3. Insurance
   4. CREDIT KIT NOW, if applicable
   5. FRONTLINE PROPERTY PROTECTION, if applicable
   6. Property Taxes, if applicable

**MATERIAL BREACHES**
   1. Malicious Destruction of Property
   2. Unauthorized Encumbering of Title (Liens, Loans, Attachments, etc)
   3. Any and All illegal uses of property (Distribution of controlled substances or other illicit activities)

8. **VENDEE'S DECLARATION**
   By checking the appropriate box below, said Vendee declares the intended use of the premises and further acknowledges understanding and agreement with the corresponding conditions and/or restrictions of said use.

Check the appropriate box to identify the specific use of the property:
   ☐ PRIMARY RESIDENCE – Purchaser shall purchase to LIVE IN. _____
      1. Contracting Party must occupy the property for the duration of the contract.
      2. NO leasing or renting of the property shall be permitted.

   ☐ INVESTMENT PROPERTY – Property is being purchased to RESALE or for RENT. _____
      1. Contracting Party shall not contract to sell subject property on "Land Contract" or transfer interest via "Assumption" to another party without written approval by Vendor.
      2. Contracting Party hereby agrees to a 50/50 "profit sharing split" of 'net' proceeds (monies after paying monthly obligation due under this contract) with Vendor, in the event purchaser wants to lease or rent subject property PRIOR TO PAY-OFF. Vendor's

# LAND CONTRACT ADDENDUM

agent **FRONTLINE PROPERTY PROTECTION, LLC®** must review and approve all contracts prior to tenant placement. Further, procured "Security Deposit" must be placed in escrow with **FLPP®** until time of Land Contract pay-off.

### 9. ACKNOWLEDGEMENT AND VERIFICATION

With signatures attached, the following Vendee(s) unequivocally express FULL and COMPLETE understanding of all terms and conditions herein contained. Additionally, Vendee(s) agrees to adhere with and conform to contract requirements. Vendee(s) hereby acknowledges that ample time has been allotted for contract review and consultation by qualified legal counsel. Further, all parties (Vendor and Vendee(s)), attest that they are of legal age, sound mind, and are authorized to contract on behalf of said entity or individual.

**VENDOR'S ACKNOWLEDGMENT**

Signature: *[signed] Antoine Benjamin*   Date: 3/11/11

Printed Name: Antoine Benjamin

Title: Chief Operations Officer -----BENJIGATES ESTATES, LLC – (248)-595-8625

**VENDEE'S ACKNOWLEDGMENT**

INDIVIDUAL(S):

Signature: *[signed] Brenda Eady*

Printed Name: BRENDA EADY   Date: 3/11/11

Signature: _____

Printed Name: _____ Date: _____

ENTITY:

Signature: _____   Date: _____

Printed Name: _____

Title - Phone Number: (____) ____-_____

**NOTARY PUBLIC'S ACKNOWLEDGMENT**

STATE OF MICHIGAN
COUNTY OF WAYNE

On this 11 day of March, 2011 before me personally came and appeared ANTOINE BENJAMIN, and BRENDA EADY, known to me to be the individual described in and who executed the foregoing instrument, and who duly acknowledged to me that she/he executed same for the purpose therein contained. IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public: *[signed]*

Printed Name: Eugene W. Broadway

My commission expires: 3.18.2016

Page 3 of 3

